IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS,
SAN ANTONIO DIVISION

FILED
2010 MAY -5 PM 3:18
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

Darin Frazier, §
Plaintiff §
§   Civil Action No. _____
vs. §
§   SA10CA0348 FB
The United States of America, §
Defendant §

## PLAINTIFF'S ORIGINAL COMPLAINT

### A. Parties

1.   Plaintiff, Darin Frazier, is an individual that is a resident of the State of Texas.

2.   Defendant is the United States of America. Defendant, the United States of America, may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the summons and of Plaintiff's Original Complaint on **John E. Murphy, United States Attorney for the Western District of Texas**, by certified mail, return receipt requested at his office, **United States Attorney, Western District of Texas, 601 N.W. Loop 410, Suite 600, San Antonio, Texas 78216, to the attention of the Civil Process Clerk**, and by serving a copy of the summons and Plaintiff's Original Complaint on **Eric Holder, Attorney General of the United States**, by certified mail, return receipt requested, at the **Attorney General's Office, 950 Pennsylvania Ave, NE, Washington, D.C. 20543, to the attention of the Civil Process Clerk**.

### B. Jurisdiction

3.   This case is commenced and prosecuted against the United States of America pursuant to and in compliance with 28 U.S.C. §§2671-2680, commonly referred to as the "Federal Tort Claims Act" (also referenced herein as the "Act"). Liability of the United States is predicated

specifically on 28 U.S.C. §§ 1346(b)(1) and 2674 because the personal injuries and resulting damages of which complaint is made were proximately caused by negligent acts and omissions of government employees while acting within the course and scope of their employment under circumstances where the United States of America, if a private person, would be liable to the Plaintiff in the same manner and to the same extent as a private individual under the laws of the State of Texas. This Federal District Court has jurisdiction of this cause, because this action is brought pursuant to and in compliance with 28 U.S.C §§1346(b), 2671-2680 et seq., which vests exclusive subject matter jurisdiction of Federal Tort Claims Act litigation in the Federal District Courts.

## C. Venue

4. Venue is proper in this district under 28 U.S.C. §1402(b) because Darin Frazier resides in this district and because the acts and omissions complained of occurred in this district.

## D. Conditions Precedent

5. The United States Army is an agency of the United States of America.

6. At all times material hereto, all persons involved in transporting, situating, and erecting the portable rock-climbing wall such that the wall came into contact with overhead high-voltage power lines, and which proximately caused injuries to Plaintiff, Darin Frazier, were agents, servants, and/or employees of the Department of the Army of the United States of America.

7. Agents, servants, and/or employees of the Department of the Army, Staff Sergeant (SSgt.) Jose Luis Nieto and SSgt. Michael Anthony Ramirez were at all times material hereto, acting within the course and scope of their employment.

8. Plaintiff, Darin Frazier timely presented an executed Form 95, or other written notification of this incident, accompanied by a claim for monetary damages in a sum certain for personal

injury alleged to have occurred by reason of the incident to the appropriate federal agency within two years after the claim accrued.

9. The properly executed Form 95 and attachments were received by the Department Of The Army on April 6, 2009.

10. The Federal Tort Claims Act, 28 U.S.C §§1346(b), 2671-2680 et seq., ("The Act") contains a mandatory six-month administrative investigation and settlement period.

11. Filing of the administrative claim tolled the statute of limitations indefinitely or until such time as the Army takes final administrative action on the claim in writing. Final administrative action consists of a denial or final settlement offer. Final administrative action on the claim has not occurred.

12. Plaintiff, Darin Frazier, through his legal counsel, presented in writing a properly completed form 95 more than 6 months prior to the time this original complaint was filed.

13. Plaintiff, Darin Frazier included an attachment to the completed form 95 denominated "Formal Letter of Demand And Attachment to Form 95, Incorporated By Reference" dated April 1, 2009, more than 6 months prior to the time this original complaint was filed.

14. Plaintiff, Darin Frazier, timely presented (was received by the appropriate agency) his claim under the Federal Tort Claims Act in writing to the Department of the Army and subsequently Darrin Fraizier, and his counsel of record, had a face to face meeting with the U.S. Army Claims Service action officer in San Antonio, Texas, for the purposes of allowing the U.S. Army an opportunity to informally obtain Darrin Frazier's version of the incident, background information, and to discuss the damages as alleged.

15. Plaintiff, Darrin Frazier, has been under continuous medical care since the date of the incident and the United States has had full access to his medical care, treatment, and billings in

that a majority of his medical treatment has occurred and continues to occur at BAMC (Brooke Army Medical Center).

16. As of the date this original complaint is filed, the Department of the Army has not denied the claim, made any settlement offer, or made a final settlement offer, despite the fact an administrative claim was submitted more than 13 months ago.

### E. Facts

17. On May 16, 2009, the date of the incident, SSgt. Jose Luis Nieto and SSgt. Michael Anthony Ramirez as active service members of the United States Army were directly involved in an Armed Services Career Day that was occurring near 8th street and Kearney in Natalia, Texas.

18. SSgt. Jose Luis Nieto was an Army recruiter associated with the Potranco Recruiting Station at the time.

13. The portable rock climbing wall was affixed to a trailer and the trailer was being pulled by a pick up truck by way of its trailer hitch.

11. The pick up truck that was used to transport the portable rock climbing wall had been driven to the location where it was being erected on May 16, 2008 by SSgt. Jose Neito.

12. The portable rock climbing wall that was transported to Natalia and was being erected at the time of the incident was a "Drop a Rock" mobile rock climbing wall manufactured by Spectrum Sports International and purchased by the United States Army.

13. The portable rock climbing wall was driven to Natalia and was set up and erected at the time of the incident solely by SSgt. Jose Nieto and SSgt. Ramirez.

14. Plaintiff Darin Frazier was not involved in positioning, setting up, or erecting the portable rock climbing wall that ultimately came in contact with high voltage overhead power lines.

15. The portable rock climbing wall was placed and partially erected by personnel of the Department of the Army in preparation for activities on Career Day at the Natalia Independent School District between two public schools.

16. Members of the Department of the Army transported the truck and the trailer containing the rock climbing wall to the Natalia Independent School District.

17. SSgt. Nieto and SSgt. Ramirez were both provided adequate opportunity to thoroughly survey the area where the rock climbing wall was to be set up by them to determine whether the location where it was to be erected was safe and did not present a risk of the wall coming in contact with overhead high voltage electrical lines when fully erected.

18. SSgt. Nieto surveyed the area and determined that the location chosen was more suitable than setting up the rock climbing wall on either the street or some other location.

19. There were numerous other locations readily available for setting up the rock climbing wall that could have been chosen by SSgt. Nieto or SSgt. Ramirez that would have prevented inadvertent contact of overhead high power electrical lines when the rock climbing wall was fully erected.

20. United States Army personnel parked their truck and attached trailer such that when they raised the portable rock climbing wall, the wall would exceed the height of the high voltage overhead power lines and come into direct contact with them.

21. United States Army personnel proceeded to raise the portable rock-climbing wall in the exact location where they had initially placed the wall in their sole discretion.

22. The location where SSgt. Nieto and SSgt. Ramirez were intending to fully raise the portable rock climbing wall was an area where the portable climbing wall, when fully raised, would be within six feet of the overhead electrical power lines.

23. Texas Health and Safety Code § 752.004 states:

    (a) Unless a person, firm, corporation, or association effectively guards against danger by contact with the line as prescribed by Section 752.003, the person, firm, corporation, or association, either individually or through an agent or employee, may not perform a function or activity on land, a building, a highway, or other premises if at any time it is possible that the person performing the function or activity may:

    (1) move or be placed **within six feet of a high voltage overhead line** while performing the function or activity; or

    (2) bring any part of a tool, equipment, machine, or material **within six feet of a high voltage overhead line** while performing the function or activity.

    (b) A person, firm, corporation, or association may not require an employee to perform a function or activity prohibited by Subsection (a).

24. Texas Health and Safety Code § 752.003 states:

    a) A person, firm, corporation, or association responsible for temporary work or a temporary activity or function closer to a high voltage overhead line than the distances prescribed by this chapter must notify the operator of the line at least 48 hours before the work begins.

    (b) A person, firm, corporation, or association may not begin the work, activity, or function under this section until the person, firm, corporation, or association responsible for the work, activity, or function and the owner or operator, or both, of the high voltage overhead line have negotiated a satisfactory mutual arrangement to provide temporary de-energization and grounding, temporary relocation or raising of the line, or temporary mechanical barriers to separate and prevent contact between the line and the material or equipment or the person performing the work, activity, or function.

25. At least 48 hours prior to erecting the portable climbing wall on May 16, 2008, neither the Department of the Army personnel directly involved in planning the use of a portable rock climbing wall; those directly involved in attempting to erect the portable rock climbing wall; nor

any other member of the Department of the Army, notified American Electric Power, the electrical utility that owned the high-voltage overhead power line that was ultimately contacted during the attempted erection of the portable climbing wall, of the Army's intent to perform any work, activity, or function where the portable climbing wall was placed.

26. Army personnel directly involved in the erection of the portable climbing wall knew, or should have known, that the area where they set up and were attempting to elevate and fully erect the portable climbing wall, would cause it to come in contact with the overhead electrical power lines.

27. No member of the Department of Army provided statutory notification of its intent to perform work, activity or other function at the location where the portable mobile climbing wall was being erected.

28. As a result, no agreement was entered into with the utility to temporarily de-energize or ground the un-insulated, overhead, high-voltage power lines or to provide mechanical devices to prevent contact with the power lines.

21. If contacted, American Electric Power would have provided an assessment, free of charge, of electrical hazards when working near their lines.

22. On initiating the erection of the rock-climbing wall, Army personnel did not call out for individuals standing near the truck or attached rock-climbing wall trailer to clear the area.

23. Additionally, as the rock-climbing wall was being raised, the Army personnel controlling the rock-climbing wall were looking down at the ground.

24. As the wall was being raised, it came into contact with the high-voltage electrical power lines.

25. Sparks flew out from the power lines as the current began to run through the wall and into the truck and trailer.

26. Rather than immediately lowering the rock-climbing wall, SSgt. Nieto was observed putting down the control for raising and lowering the rock-climbing wall and observing the small grass fires that had resulted from the electrical current in the overhead power lines arcing down through the wall, truck, and trailer.

27. SSgt. Nieto did not notice that he had made contact with the overhead power lines until after a witness yelled, "You hit the power line!"

28. Ultimately, SSgt. Nieto retrieved the rock-climbing wall control and lowered the wall and began to tell bystanders and school children to get away from the truck and not to touch the truck.

29. Unfortunately, Darin Frazier suffered the effects of the negligent raising of the climbing wall, as the 7,500 volts from the high power, electrical power lines gripped him. He was standing near the truck when he was violently thrown as the power was grounded through him.

30. Darin Frazier then suffered the full catastrophic effects when his head fell against the steel rim of the pickup truck as the high voltage power coursed through his hapless body.

31. Darin Frazier writhed in agony as the high voltage electrical energy pulsed through him. The electrical power caused his cells to explode resulting in catastrophic injuries.

32. Darin Frazier was literally trapped and held by the electrical power to the truck for some time because nobody could come near him or the truck without being electrocuted themselves.

33. Several coworkers tried to free Mr. Frazier by tying a sweater around his feet to no avail. Finally, a brave student was able to pull Mr. Frazier away from the truck by tying a belt around Mr. Frazier's feet.

## F. Federal Tort Claims Act

34. Darin Frazier's injuries, which included serious third degree burn injuries and a near-fatal electrical shock to Darin Frazier, could have easily been prevented through the exercise of reasonable care by the Army personnel assigned to the Armed Forces Career Day activities. But for the negligent acts and/or omissions of the United States government employees who transported and negligently erected the climbing wall, this life-altering tragedy would never have happened.

35. U.S. Army personnel failed to adequately and thoroughly survey the designated area before erection of the portable climbing wall for the purposes of identifying potential electrical hazards. Had they done so with recognition of the hazards known or knowable to them by simple review of instructions for use provided with the "drop a rock" climbing wall, they would **not** have made the decision to park and erect the rock-climbing wall where they did.

36. Based on the facts of this case, SSgt. Nieto and SSgt. Ramirez:

   a. failed to set up the rock-climbing wall in a safe location and in a manner safe to students and Natalia ISD staff;

   b. failed to instruct bystanders to remain clear of the rock climbing wall or to clear the area prior to erecting the rock climbing wall;

   c. failed to properly observe the set up location as part of their express duty regarding safely setting up the wall;

   d. failed to look for electrical power lines or worse yet knew the power lines were there and erected the wall knowing this; and

   e. failed to follow safe written operating procedures supplied by the manufacturer of the climbing wall and/or the U.S. Army; and,

    f.  violated statutory prohibitions regarding performing activities within 10 and 6 feet of high power overhead electric lines.

37.  The Department of the Army is liable for all of the above acts and/or omissions of both SSgt. Nieto and SSgt. Ramirez under the doctrine of *respondeat superior*. Independently of the above actions and/or omissions, the Department of the Army:

    a.  failed to adequately train SSgt. Nieto with regard to proper set up and erection of the portable "drop a rock "climbing wall;

    b.  failed to adequately supervise SSgt. Nieto's set up and erection of the portable "drop a rock" climbing wall;

    c.  failed to adequately train SSgt. Ramirez with regard to proper set up and erection of the portable "drop a rock "climbing wall;

    d.  failed to adequately supervise SSgt. Ramirez's set up and erection of the portable "drop a rock" climbing wall;

    e.  failed to adequately train SSgt. Nieto regarding the hazards and proper protocols for working near electrical power lines;

    f.  failed to adequately supervise SSgt. Nieto while he was working near electrical power lines;

    g.  failed to adequately train SSgt. Ramirez regarding the hazards and proper protocols for working near electrical power lines;

    h.  failed to adequately supervise SSgt. Nieto while he was working near electrical power lines; and,

    i.  violated statutory prohibitions regarding performing activities within six feet of high power overhead electric lines.

38.  These acts and omissions by SSgt. Nieto, SSgt. Ramirez, and the Army were negligent. SSgt. Nieto and SSgt. Ramirez were employees of defendant and were acting in the course and scope of his employment and had a duty to exercise ordinary care and transport, situate, and erect the rock-climbing wall reasonably and prudently. Under the laws of the State of Texas, a private person would be liable to Plaintiff, Darin Frazier for these negligent acts. Under 28 U.S.C. § 2674, the United States is liable to Plaintiff, Darin Frazier for damages resulting from the catastrophic personal injuries described below.

### G. Damages

39.  As a direct result of Defendants' negligence, Plaintiff, Darin Frazier, suffered the following injuries and damages:

a. Reasonable and necessary medical care and expenses incurred in the past. These expenses were incurred by Darin Frazier, for the necessary care and treatment of the injuries resulting from the tragedy complained of herein and such charges are reasonable and were usual and customary charges for such services in Bexar County, Texas;

b. Reasonable and necessary medical care and expenses that, in reasonable probability, Darin Frazier will incur in the future;

c. Physical pain and mental anguish sustained in the past;

d. Physical pain and mental anguish that, in reasonable probability, Darin Frazier will sustain in the future;

e. Physical impairment sustained in the past;

f. Physical impairment that, in reasonable probability, Darin Frazier will sustain in the future;

g. Loss of earning capacity sustained in the past;

    h. Loss of earning capacity that, in reasonable probability, Darin Frazier will sustain in the future;

    i. Disfigurement sustained in the past; and

    j. Disfigurement that, in reasonable probability, Darin Frazier will sustain in the future.

## H. Prayer

40. For all of the foregoing reasons, Plaintiff, Darin Frazier prays that Defendant be cited to appear and answer herein and that on a final hearing hereof, Plaintiff have judgment of and from said Defendant in such sums as will fully and fairly compensate Plaintiff for their damages and losses; together with interest, both prejudgment and post-judgment, all costs of court, and for such other and further relief, general and special, at law or in equity, to which Plaintiff may be justly entitled.

                                                  Respectfully submitted,

                                                  The Law Offices of
Tinsman & Sciano, Inc.
10107 McAllister Freeway
San Antonio, Texas 78216
Telephone: (210) 225-3121
Facsimile: (210)225-6235

By: _____
Daniel J.T. Sciano
State Bar No. 17881200
ATTORNEYS FOR PLAINTIFF